UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Energy Intelligence Group, Inc., Energy Intelligence Group (UK) Limited | **Civil Action No. 10-cv-7453** |
| Plaintiffs, | |
| v. | **Hon. Robert M. Dow Jr.** |
| UBS O'Connor LLC, UBS Securities LLC, UBS AG, and UBS Investment Bank | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS THE COMPLAINT**

Winston & Strawn LLP
200 Park Avenue
New York, New York 10166
*Attorneys for Defendants*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................. ii

I.   PRELIMINARY STATEMENT .................................................................................1

II.  FACTS .....................................................................................................................2

III. ARGUMENT ............................................................................................................5

 1. Legal Standard ...............................................................................................6

 2. Plaintiffs May Not Continue Their Misuse of the Federal Court System ...................6

     a.  This Action Should Be Dismissed as Duplicative of the SDNY
         Action ................................................................................................6

         i.    The SDNY Action and This Action Involve Similar Claims ..............8

         ii.   The SDNY Action and This Action Involve Similar Parties ..............9

         iii.  The SDNY Action Will Provide Similar Available Relief ...............10

         iv.   The SDNY Action Was the First Action Filed................................11

     b.  Plaintiffs Have Impermissibly Split Their Claims ......................................13

 3. This Action Should Be Dismissed as Legally Insufficient.........................................16

     a.  The Vast Majority of Plaintiffs' Alleged Infringements Are Barred
         by the Statute of Limitations .......................................................................16

     b.  Plaintiffs Do Not State a Claim Under the Digital Millennium
         Copyright Act ..............................................................................................17

         i.    No Copyright Management Information Was Removed or
               Altered From the Publications...........................................................18

         ii.   Plaintiffs Cannot Adequately Plead a Claim under 17 U.S.C.
               § 1202(b)(1).....................................................................................20

         iii.  Plaintiffs Do Not Adequately Plead the Mental State Required
               under 17 U.S.C. § 1202(b)(3)..........................................................22

IV.  CONCLUSION.........................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*A.P.T., Inc. v. Quad Envtl. Techs. Corp.,*
  698 F. Supp. 718 (N.D. Ill. 1988) ...................................................................................12

*Albers by Albers v. Church of the Nazarene,*
  698 F.2d 852 (7th Cir. 1983) ..........................................................................................16

*Cable v. Agence France Presse,*
  728 F. Supp. 2d 977 (N.D. Ill. 2010) ..............................................................................19

*Chicago Heights Steel v. Rapid Eng'g, Inc.,*
  No. 94 C 3579, 1995 WL 27398 (N.D. Ill. Jan 23, 1995) ...............................................12

*CIVIX-DDI, LLC v. Expedia, Inc.,*
  No. 04 C 8031, 2005 WL 1126906 (N.D. Ill. May 2, 2005) ...............................6, 15, 16

*Clerides v. Boeing Co.,*
  534 F.3d 623 (7th Cir. 2008) ..........................................................................................13

*Diversified Healthcare, Inc. v. N.J. Morgan & Assocs. Inc.,*
  No. EV-00-2330, 2001 WL 405592 (S.D. Ind. Mar. 28, 2001)..........................................8

*Energy Intelligence Group, Inc. v. UBS Financial Services, Inc.,*
  No. 08 Civ. 1497 (DAB), 2009 WL 1490603 (S.D.N.Y. May 22, 2009)...............................3

*Fitzgerald v. CBS Broadcasting, Inc.,*
  491 F. Supp. 2d 177 (D. Mass. 2007) ..............................................................................16

*Gasbarra v. Park-Ohio Indus., Inc.,*
  655 F.2d 119 (7th Cir. 1981) ..........................................................................................14

*Gordon v. Nextel Commc'ns and Mullen Adver., Inc.,*
  345 F.3d 922 (6th Cir. 2003) .....................................................................................21, 22

*Gregerson v. Vilana Fin., Inc.,*
  No. 06 Civ. 1164, 2008 WL 451060 (D. Minn. Feb. 15, 2008) .............................................20

*Hicks v. Midwest Transp., Inc.,*
  No. 07 Civ. 854, 2008 WL 1766523 (S.D. Ill. Apr. 14, 2008) .........................................11-12

*In re Factor VIII or IX Concentrate Blood Prods. Litig.,*
  484 F.3d 951 (7th Cir. 2007) ..........................................................................................13

*Indianapolis Motor Speedway v. Polaris Indus., Inc.*,
  No. IP 99-1190-C, 2000 WL 777895 (S.D. Ind. Apr. 28, 2000) ............................................12

*IQ Group, Ltd. v. Wiesner Publ'g, LLC*,
  409 F. Supp. 2d 587 (D.N.J. 2006) ...................................................................................19, 20

*Jaramillo v. DineEquity, Inc.*,
  664 F. Supp. 2d 908 (N.D. Ill. 2009) ..........................................................................................7

*Johnson v. Rivera*,
  272 F.3d 519 (7th Cir. 2001) ......................................................................................................6

*Kennihan & Co. v. Calphalon Corp.*,
  No. 98 C 7175, 1999 WL 261830 (N.D. Ill. Apr. 12, 1999)...................................................11

*Keogh v. Big Lots Corp.*,
  No. 3:04-00738, 2006 WL 861378 (M.D. Tenn. Apr. 27, 2006) ......................................22, 23

*Kim v. Sara Lee Bakery Group, Inc.*,
  412 F. Supp. 2d 929 (N.D. Ill. 2006) ....................................................................9, 11, 13, 16

*Lee v. City of Chicago*,
  330 F.3d 456 (7th Cir. 2003) ......................................................................................................6

*Mid America Title Co. v. Kirk*,
  991 F.2d 417 (7th Cir. 1993) ....................................................................................................17

*More v. R & L Carriers, Inc.*,
  No. 00 C 5583, 2002 WL 1632206 (N.D. Ill. July 23, 2002) ..................................................15

*Murphy v. Millennium Radio Group LLC*,
  No. 08-1743, 2010 WL 1372408 (D.N.J. Mar. 31, 2010) ..................................................19, 20

*Ridge Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.*,
  572 F. Supp. 1210 (N.D. Ill. 1983) .............................................................................................7

*Rogers v. Desiderio*,
  58 F.3d 299 (7th Cir. 1995) ......................................................................................................15

*Rudnicki v. WPNA 1490 AM*,
  No. 04 C 5719, 2009 WL 4800030 (N.D. Ill. Dec. 10, 2009) .................................................16

*Serlin v. Arthur Andersen & Co.*,
  3 F.3d 221 (7th Cir. 1993) ......................................................................................................7, 9

*Shaver v. F.W. Woolworth Co.*,
  840 F.2d 1361 (7th Cir. 1988) ............................................................................................13, 14

*Singer v. Pierce & Assocs., P.C.*,
  383 F.3d 596 (7th Cir. 2004) ................................................................6

*Sommerfield v. City of Chicago*,
  No. 08 C 3025, 2009 WL 500643 (N.D. Ill. Feb. 26, 2009).....................................6, 8, 10, 14

*Stroitelstvo Bulgaria Ltd. v. Bulgarian-American Enterprise Fund*,
  589 F.3d 417 (7th Cir. 2009) ...............................................................13

*Textile Secrets Int'l, Inc. v. Ya-Ya Brand Inc.*,
  524 F. Supp. 2d 1184 (C.D. Cal. 2007) ........................................................18, 19

*United States v. West Prods., Ltd.*,
  No. 95 Civ. 1424, 1997 WL 668210 (S.D.N.Y. Oct. 27, 1997) .............................................9

STATUTES

17 U.S.C. § 507(b) ..........................................................................16, 17

17 U.S.C. § 1202 ...........................................................................14, 18, 19, 20

17 U.S.C. § 1202(b)(1) ........................................................................ *passim*

17 U.S.C. § 1202(b)(3) .........................................................................18, 22, 23

17 U.S.C. § 1202(c) ...........................................................................18

OTHER AUTHORITIES

H.R. Rep. No. 105-551 Pt. 1 (1998) .............................................................19

## I.    **PRELIMINARY STATEMENT**

This is Plaintiffs Energy Intelligence Group, Inc. and Energy Intelligence Group (UK) Limited's (collectively "Plaintiffs" or "EIG") third lawsuit in as many forums against different UBS entities based on the same set of allegations.  EIG has on-going lawsuits in the Southern District of New York ("SDNY") and in the United Kingdom, and has brought this action in an attempt to undermine and avoid unfavorable rulings already decided multiple times by the SDNY.  Rather than accept the SDNY's denial of its motion to add new parties, or await the result of a then-pending motion to amend to add new claims, EIG instead filed this wholly improper lawsuit in a new forum – with which UBS O'Connor LLC, UBS Securities LLC, UBS AG, and UBS Investment Bank ("Defendants" or "UBS") have only a tangential connection.  Since service of the Complaint in this action, EIG's motion to amend was, in fact, denied for the second time, by yet another federal judge in the SDNY.  EIG's continued prosecution of this lawsuit is in total disregard of the SDNY's prior decisions, and any further litigation in this Court is improper.  This Court need not reach the merits of Plaintiffs' claims; the Complaint filed in this action is a blatant act of forum shopping, and the vast majority of the claims raised in this forum have already been foreclosed by the SDNY.  Those valid and binding decisions must be respected.

Plaintiffs' filing and continued prosecution of this new suit is an outrageous attempt to subvert judicial authority and burden UBS with litigating in three forums across the globe.  Moreover, even were Plaintiffs' filing of this lawsuit not a clear case of forum shopping, the vast majority of Plaintiffs' claims are wholly barred by the applicable statute of limitations.  As such, Plaintiffs' Complaint, to the extent it is not dismissed in full, is subject to significant narrowing.

## II.    FACTS

**The Parties**

Plaintiffs are publishers of newsletters covering the global energy industry. (Compl. ¶ 10). Relevant to this action, Plaintiffs publish three daily subscription newsletters: *International Oil Daily* ("IOD"), *World Gas Intelligence* ("WGI"), and *Petroleum Intelligence Weekly* ("PIW") (collectively the "Publications") for which they have allegedly registered copyrights with the U.S. Copyright Office. (*Id.* ¶¶ 10, 21). Plaintiffs operate in both the US and the UK, and sell subscriptions for receipt and use of their publications, including IOD, WGI, and PIW, worldwide. (*Id.* ¶¶ 13, 16).

Defendants are all either corporate or divisional entities of UBS.[1] UBS AG is a Swiss banking institution that operates worldwide, including within the United States. UBS O'Connor LLC and UBS Securities LLC are Delaware limited liability companies and subsidiaries of UBS AG. UBS Investment Bank is not a registered corporate entity (and is not a proper defendant here) but rather is a division of UBS AG. Plaintiffs have brought suit on the basis of a UBS publication, *Daily Oil News* ("DON"), a daily newsletter provided to UBS clients.

**The Southern District of New York Action**

On February 13, 2008, Plaintiffs filed the first of their three lawsuits. This first lawsuit in the Southern District of New York ("SDNY Action") alleged two counts of copyright infringement, based upon issues of IOD dated November 20, 2007 and November 21, 2007, as well as three trademark-related claims. (Decl. of Thomas Patrick Lane ("Lane Decl.") Ex. A). The suit was filed against UBS Financial Services, Inc. ("UBSFS"), a subsidiary of UBS AG.

---

[1] As counsel for UBS has repeatedly told EIG, UBS Limited, a UBS-entity not involved in this action, publishes DON, the daily research report dealing with the energy and petroleum industries that forms the basis of EIG's claims.

(*Id.,* Ex. A ¶¶ 41-83).  The November 20, 2007 DON issue was a thirteen-page report containing six one-paragraph-long basic news reports attributed to IOD.  (*Id.* Ex. A at Ex. E).  The November 21, 2007 DON issue was a nine-page report containing eight one-paragraph-long news reports attributed to IOD.  (*Id.* Ex. A at Ex. F).

On April 11, 2008, UBSFS moved to dismiss the three trademark claims. UBSFS' motion was granted on May 22, 2009 by the Honorable Deborah A. Batts.  *Energy Intelligence Group, Inc. v. UBS Financial Services, Inc.*, No. 08 Civ. 1497 (DAB), 2009 WL 1490603, at *6-7 (S.D.N.Y. May 22, 2009).  Despite having the clear ability to do so, Plaintiffs did not seek any discovery from February 13, 2008 to December 2, 2009, when they served their First Set of Requests for the Production of Document and Things and First Set of Interrogatories.

**The UK Action**

On August 5, 2010, UBSFS learned that EIG had filed a lawsuit against UBS Limited in the U.K. High Court of Chancery ("UK Action").  The Particulars of Claim for the UK Action contain allegations almost identical to those in this action, involving alleged infringement of three of Plaintiffs' publications, IOD, WGI, and PIW.  (Lane Decl. Ex. B).  The key difference between the UK and US litigations is the named defendant and the number of alleged infringements.  Plaintiffs' UK Action is brought against UBS Limited, the entity that actually compiles and produces DON.  In the UK, Plaintiffs have alleged infringement of approximately 650 issues of IOD as a result of both the alleged copying of portions of IOD in DON, as well as the distribution, both domestic and international, of DON.  (*Id.*).

**Motion Practice in the SDNY**

Pursuant to SDNY local rules, UBSFS wrote to Plaintiffs' counsel on August 4, 2011 to request that Plaintiffs consent to the stay or dismissal of the SDNY Action in light of

EIG's commencement of the UK Action against the UBS entity that actually compiled and distributed DON. (*Id.* Ex. C). Plaintiffs did not respond. On August 11, 2010, UBSFS wrote to the Court requesting a pre-motion conference in anticipation of UBSFS' motion to stay or dismiss this action on the grounds of parallel proceedings and/or *forum non conveniens* in favor of the UK Action. (*Id.* Ex. D). In lieu of consenting to UBSFS' request, Plaintiffs made their own request that UBSFS consent to an amendment of the SDNY Action complaint to add UBS AG, UBS O'Connor LLC, UBS Securities LLC, and UBS Investment Bank as parties to the SDNY Action, to add the publications PIW and WGI as bases for infringement, and finally to add over 800 potential counts of infringement to that action. (*Id.*. Ex. E). UBSFS did not consent to Plaintiffs' proposed amendment and, two days later, on August 13, 2010, Plaintiffs wrote to the court requesting a pre-motion conference to add the four defendants named here as part of a motion to amend. (*Id.* Ex. F).

On September 9, 2010, Plaintiffs' request to add new parties and claims was properly denied by Judge Batts as untimely. (*Id.* Ex. G). Plaintiffs sought reconsideration of Judge Batts' decision as to additional claims on September 22, 2010; Plaintiffs did not seek reconsideration of their request to add new parties. (*Id.* Ex. H). After having the "proposed motion to amend" referred to Magistrate Judge Kevin N. Fox on September 27, 2010, Plaintiffs then moved yet again to amend the complaint in the SDNY Action. (*Id.* Exs. I; J).

Following briefing of the motion to amend, as well as various discovery-related motions, Magistrate Judge Fox heard oral argument on April 19, 2011. (*Id.* Ex. K). Judge Fox properly ruled that Plaintiffs had unreasonably delayed in seeking to amend the SDNY complaint, as the possibility of further counts of infringement had been known to Plaintiffs since at least November 2009, when UBSFS produced hundreds of copies of DON (even prior to

receiving any discovery demand). (*Id.* Exs. K, L). Further, Judge Fox correctly noted that the inclusion of over 800 potential additional counts of infringement three and a half years into the litigation would substantially prejudice UBSFS due to the hundred-fold increase in potential damages. (*Id.*). The parties were directed to complete depositions in a limited renewed discovery period. (*Id.*). Remarkably, Plaintiffs have now moved to set aside Judge Fox's Order, in effect seeking reconsideration of Judge Fox's denial of EIG's motion for reconsideration.

**Filing of the Northern District of Illinois Action**

On November 19, 2010, Defendants' counsel learned that Plaintiffs had filed this lawsuit against Defendants in the Northern District of Illinois (the "Action). Despite Defendants' request, Plaintiffs provided no explanation as to why another suit was filed and did not immediately serve the Complaint. Defendants wrote to Plaintiffs on December 3, 2010 informing Plaintiffs that Defendants would, if Plaintiffs would not withdraw the suit, seek to file sanctions against Plaintiffs for bringing an action involving claims both barred by the statute of limitations and which reflected a clear attempt by Plaintiffs to undermine what was, at the time, the potential for an adverse ruling on the then-pending motion to amend. (*Id.* Ex. M). By letter on December 10, 2010, EIG refused to withdraw the Action. (*Id.* Ex. N). On March 3, 2011, some four months after filing, Plaintiffs finally served the Complaint upon the Defendants.

**III.    ARGUMENT**

Plaintiffs have brought this Action in a brazen attempt to circumvent the denial of their attempt to add the very same Defendants to a nearly-identical lawsuit in the SDNY. Having had their motion to amend or add new parties denied, Plaintiffs instead moved on to a new forum. Plaintiffs cannot simply ignore the proper decisions of the SDNY – the court that has been presiding for three and a half years over a lawsuit between Plaintiffs and an entity directly related to the Defendants here – and take their lawsuit on the road. Doing so is

tantamount to blatant forum shopping and should not be countenanced by this Court. Moreover, Plaintiffs' claims in this action, to the extent they are not precluded by the prior-filed SDNY Action, are largely barred by the statute of limitations or are simply meritless.

      1.      <u>Legal Standard</u>

"A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of a complaint for failure to state a claim upon which relief may be granted." *Johnson v. Rivera,* 272 F.3d 519, 520-21 (7th Cir. 2001). The court, in ruling on a motion to dismiss, considers all facts alleged in the complaint to be true and in a light most favorable to the plaintiff. *See, e.g., Singer v. Pierce & Assocs., P.C.,* 383 F.3d 596, 597 (7th Cir. 2004). Here, however, even accepting this standard, Plaintiffs have failed to assert claims either in good faith or with any basis in fact. Instead, dismissal is appropriate where, as here, "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Lee v. City of Chicago,* 330 F.3d 456, 459 (7th Cir. 2003) (citation omitted). Further, an action should be dismissed where the plaintiff only filed suit to avoid the effect of a decision arising from a previously-filed suit. *Sommerfield v. City of Chicago*, No. 08 C 3025, 2009 WL 500643, at *2 (N.D. Ill. Feb. 26, 2009) (dismissing a defendant from a suit where the defendant argued that the suit was "a flagrant attempt to circumvent the court's orders" in a previously-filed, duplicative action); *CIVIX-DDI, LLC v. Expedia, Inc*., No. 04 C 8031, 2005 WL 1126906, at *4 (N.D. Ill. May 2, 2005) (dismissing an action where the plaintiff had filed a second suit to avoid a potential adverse ruling in a first-filed suit).

      2.      <u>Plaintiffs May Not Continue Their Misuse of the Federal Court System</u>

            a.      <u>This Action Should Be Dismissed as Duplicative of the SDNY Action</u>

Plaintiffs' dispute should be resolved in the SDNY as it presents the most efficient and reasonable forum – indeed Plaintiffs' claims raised before this Court *have already*

been resolved by the SDNY. The claims at issue in the Complaint – alleged infringement of IOD, WGI, and PIW – are identical to those raised in the proposed amended complaint in the SDNY Action. (Lane Decl. Ex. J). These claims do not simply bear some minor resemblance to one another; they are identical and should properly be litigated in a single location. As the situs of a litigation that has been ongoing for over three and a half years, the SDNY is the proper jurisdiction.

A district court has inherent power to dismiss an action based on the pendency of a parallel proceeding in another federal district. *Serlin v. Arthur Andersen & Co*., 3 F.3d 221, 223 (7th Cir. 1993) ("As a general rule, a federal suit may be dismissed 'for reasons of wise judicial administration . . . whenever it is duplicative of a parallel action already pending in another federal court.'" (citation omitted)); *see also Ridge Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc*., 572 F. Supp. 1210, 1212 -13 (N.D. Ill. 1983) ("It is well recognized that a federal district court has the inherent power to administer its docket in a manner that conserves scarce judicial resources and promotes the efficient and comprehensive disposition of cases."). Two suits are duplicative, if they involve similar claims, parties, and available relief. *Serlin*, 3 F.3d at 223 ("District courts are accorded 'a great deal of latitude and discretion' in determining whether one action is duplicative of another, but generally, a suit is duplicative if the 'claims, parties, and available relief do not significantly differ between the two actions.'" (citation omitted)).

Further, when two similar actions are filed in federal district courts, the first-filed suit should proceed over the later-filed suit. *Jaramillo v. DineEquity, Inc*., 664 F. Supp. 2d 908, 917 (N.D. Ill. 2009) (The first-filed rule "states that when two similar actions are filed before two different federal judges, judicial economy favors a rule that allows only the first-filed case to

proceed.").  When a plaintiff brings an action to protect against an adverse decision in a suit in another jurisdiction, that action should be dismissed.  *See Diversified Healthcare, Inc. v. N.J. Morgan & Assocs. Inc*., No. EV-00-2330, 2001 WL 405592, at \*4-5 (S.D. Ind. Mar. 28, 2001) (dismissing an action where the suit was duplicative of another action pending in another federal district court and "the circumstances of the case point toward forum shopping," in that the suit was a reaction to the possibility of suit being brought against it in another jurisdiction).  These factors clearly indicate that a dismissal is appropriate in this action.

### i.    The SDNY Action and This Action Involve Similar Claims

The Complaint filed in this Action and the complaint proposed by Plaintiffs in their motion to amend the SDNY Action are nearly identical.  (Lane Decl. Ex. J; Compl.).  A comparison of the two demonstrates that the allegations undergirding each complaint are repeated verbatim.  Whole paragraphs remain unaltered, and Plaintiffs rely on the same exact factual basis to bring this suit as was alleged in the proposed – and now denied – amended complaint.  (Lane Decl. Ex. J at ¶ 32; Compl.¶ 41).  Both actions involve claims brought under the Copyright Act.[2]  If this action is allowed to proceed, the parties would have to engage in nearly identical efforts to litigate both actions.  *Sommerfield*, 2009 WL 500643, at \*3 (dismissing an action against a defendant where, despite the plaintiff's statement that the timeframes and damages associated with two complaints were different, "the faces of the complaints demonstrate no such bifurcation of allegations or claims[,] and the nature of [the] claims suggests that there will be considerable overlap in time in regard to the evidence").

Despite being under an obligation to amend as soon as learning of the underlying basis of the amendment, Plaintiffs unduly delayed for years in moving to amend the complaint in

---

[2] The only difference between this Action and the Proposed Complaint in the SDNY Action, is the addition of the claim alleged under the Digital Millennium Copyright Act ("DMCA").  As demonstrated below, Plaintiffs are unable to plead facts sufficient to allege a claim under the DMCA.

the SDNY Action. *See United States v. West Prods., Ltd.*, No. 95 Civ. 1424, 1997 WL 668210, at *4 (S.D.N.Y. Oct. 27, 1997) ("[A] motion to amend should be made as soon as the necessity for altering the pleading becomes apparent, [and] [a] party who delays in seeking an amendment is acting contrary to the spirit of the rule and runs the risk of the court denying permission because of the passage of time . . . ."). It is for precisely this reason that *both* Judge Batts and Judge Fox denied Plaintiffs' motion to amend. (Lane Decl. Exs. G, J, K). Plaintiffs' decision *not* to seek reconsideration of their motion to amend to add new parties (all of whom have been sued here), was a choice made by Plaintiffs. The possibility that Plaintiffs' decision could foreclose a future lawsuit does not weigh against dismissal of this Action. *See Serlin*, 3 F.3d at 224 ("[E]ven if [the plaintiff] eventually does find himself out of court [because of untimely service and the statute of limitations bar in the first-filed action], that result will be entirely a consequence of the plaintiff's own failure to follow the rules," and the result is not a special factor counseling against dismissal); *see also Kim v. Sara Lee Bakery Group, Inc*., 412 F. Supp. 2d 929, 941 (N.D. Ill. 2006) (dismissing a duplicative proceeding, despite the fact that the plaintiff "may find her relief in the First Action limited as a consequence of a failure to diligently pursue discovery and to supplement discovery responses, or to otherwise move with more expedition in the First Action").

ii.      **The SDNY Action and This Action Involve Similar Parties**

Plaintiffs in this Action and in the SDNY Action are identical, while the Defendants are closely related, both in corporate form and as to the activities in which Defendants allegedly engaged. UBSFS, the defendant in the SDNY Action is an affiliate of UBS O'Connor LLC and UBS Securities LLC and a subsidiary of UBS AG.[3] Plaintiffs plead

---

[3] As mentioned previously, and discussed further below, UBS Investment Bank is not an entity capable of being sued.

copyright infringement liability on the basis of identical facts, asserting that the UBS defendants infringed Plaintiffs' copyright in IOD through the copying and distributing of DON. (Lane Decl. Ex. A at ¶¶ 29-30; Compl. ¶¶ 33-34). Plaintiffs themselves appear to view the UBS entities as interchangeable, based upon Plaintiffs' identical pleadings and attempt to add these very same parties to the SDNY Action. As already noted, Judge Batts properly denied Plaintiffs' request to add new defendants as untimely. Plaintiffs had a second opportunity to seek leave to add these defendants when their first request to add additional claims was being reconsidered by Magistrate Judge Fox, and Plaintiffs failed to do so. Judge Fox agreed with Judge Batts' determination that Plaintiffs' motion was untimely simply confirms that Plaintiffs delayed too long in seeking to amend the SDNY complaint to add the very Defendants and claims asserted here. Plaintiffs are properly precluded from seeking an end-run around the decisions of two SDNY judges by asserting these additional claims and new defendants in a new forum. Now that the SDNY has twice determined that Plaintiffs may not amend their complaint in that action, this adverse consequence in the first-filed suit "does not override the 'wholly legitimate concern for wise judicial administration." *Sommerfield*, 2009 WL 500643, at *3.

### iii.    The SDNY Action Will Provide Similar Available Relief

Any relief available to Plaintiffs in this dispute (although Defendants maintain that Plaintiffs are entitled to no relief whatsoever) will be awarded as part of the SDNY Action. A suit against Defendants here will not provide Plaintiffs any increased relief – by suing under a federal statute, the same relief is available to Plaintiffs in both actions. Any variation in relief available in this Action that is more favorable to Plaintiffs as a result of different jurisdictional interpretations of the Copyright Act only serves to indicate that Plaintiffs were motivated by forum-shopping in bringing their case here. *Kennihan & Co. v. Calphalon Corp*., No 98 C 7175, 1999 WL 261830, at *2 (N.D. Ill. Apr. 12, 1999) (dismissing a second-filed action where the

plaintiff's argument that no similar relief could be recovered in the prior action because claims in the second action may be dissimilarly enforced had "the ring of forum shopping, and the flip side of it is the possibility of inconsistent rulings should both federal court actions proceed").

Although the SDNY Action may not include each and every specific claim asserted under the Copyright Act here, the Court may still find that the SDNY Action would provide similar relief to that requested here. Plaintiffs had the opportunity to add the DMCA claim and its additional infringement claims to the SDNY Action, but was simply foreclosed from doing so due to Plaintiffs' own delay. Thus, both forums offered the same potentially available relief at the outset. *See Kim*, 412 F. Supp. 2d at 941 (finding that the two actions involve the "same potential available relief" despite that "the relief [in the first action may be] narrowed by Plaintiff's own actions and inactions-in particular, by her failure to allege [in the first action] additional infringing products in a timely fashion").

### iv. The SDNY Action Was the First Action Filed

This Action should further be dismissed as it was filed almost *three years* after the SDNY Action. Allowing this Action to proceed while the SDNY Action is pending could result in inconsistent rulings. *Kennihan & Co.,* 1999 WL 261830, at *2 (considering "it significant that [the plaintiff] itself chose to file the [first] action well in advance of filing [the second action]" and dismissing the second action to prevent "inconsistent rulings" and in consideration of "wise judicial administration"). It would also constitute a waste of judicial resources to litigate this Action after much time and effort has already been devoted to the SDNY Action. *See Hicks v. Midwest Transp., Inc.*, No. 07 Civ. 854, 2008 WL 1766523, at *1 (S.D. Ill. Apr. 14, 2008) ("The Court should 'give[ ] regard to conservation of judicial resources and comprehensive disposition of litigation . . . .' and seek to avoid repetitive, unnecessary litigation . . . . When duplicative claims are pending in multiple federal forums, the later filed actions generally give way to the

11

first filed." (citation omitted)).

Interests of judicial efficiency clearly support a deferral to the SDNY Action, which will prevent the simultaneous litigation of two cases involving factually equivalent claims. Plaintiffs bear the burden of demonstrating that this suit should proceed over the first-filed action. *Chicago Heights Steel v. Rapid Eng'g, Inc*., No. 94 C 3579, 1995 WL 27398, at *1 (N.D. Ill. Jan 23, 1995) ("[T]he 'plaintiff bears the burden of demonstrating any special circumstances justifying an exception to the ['first-to-file'] rule.'"). Here, no circumstances exist that would warrant a deviation from the first-filed rule. *Indianapolis Motor Speedway v. Polaris Indus., Inc*., No. IP 99-1190-C, 2000 WL 777895, at *2 (S.D. Ind. Apr. 28, 2000) ("Such [special] circumstances [justifying departing from the first to file rule] include a showing: that the plaintiff in the first-filed action raced to the courthouse to avoid litigating in another forum; that the plaintiff in the secondfiled [sic] action may not be able to obtain jurisdiction over an indispensable defendant in the forum of the first-filed action; that the first-filed action is trivial in relation to the second-filed action; that the second-filed action has developed further than the first-filed action; or that the first-filed action was brought in bad faith. (internal citations omitted)). Further, the balance of convenience does not weigh in favor of this Action. *A.P.T., Inc. v. Quad Envtl. Techs. Corp.*, 698 F. Supp. 718, 721 (N.D. Ill. 1988) ("[F]ederal courts have adhered to the general rule that 'as principle of sound judicial administration, the first suit should have priority, 'absent the showing of balance of convenience in favor of the second action,' or unless there are special circumstances which justify giving priority to the second.'" (citation omitted)). All parties have retained counsel that are located in New York, and are indeed themselves located primarily in New York. Should this Action continue, the parties would have to engage in tasks already completed in the SDNY Action. Even were Plaintiffs' claims in this

Action not foreclosed by the repeated denial of Plaintiffs' motion to amend in the SDNY, it would simply be inefficient to proceed with this Action while the SDNY Action remains pending.[4]

### b. Plaintiffs Have Impermissibly Split Their Claims

This Action should further be dismissed on the grounds that Plaintiffs have engaged in impermissible claim-splitting. Plaintiffs have failed to bring all possible claims arising out the same operative facts in one action, and are thus barred from bringing another suit on the basis of the same facts. *Shaver v. F.W. Woolworth Co.*, 840 F.2d 1361, 1365 (7th Cir. 1988) ("[T]he federal definition of a cause of action, when combined with the rule against claim-splitting, requires that a plaintiff allege in one proceeding all claims for relief arising out of a single core of operative facts, or be precluded from pursuing those claims in the future."); *Kim*, 412 F. Supp. 2d at 941-42 ("'It is well established, under the doctrine of 'claim splitting,' that a party cannot avoid the effects of *res judicata* by splitting her cause of action into separate grounds of recovery and then raising the separate grounds in successive suits. Rather, a party must bring in one action all legal theories arising out of the same transaction or series of transactions.'" (citation omitted)).

Here, Plaintiffs have alleged the same course of conduct as in the SDNY Action. *Gasbarra v. Park-Ohio Indus., Inc.*, 655 F.2d 119, 121 (7th Cir. 1981) ("In determining whether

---

[4] Indeed, continued litigation of this Action in the Northern District of Illinois also implicates issues of *forum non conveniens*, as the SDNY is without question a more proper and convenient forum for these issues to be decided. *Stroitelstvo Bulgaria Ltd. v. Bulgarian-American Enterprise Fund*, 589 F.3d 417, 421 (7th Cir. 2009) ("The common law doctrine of *forum non conveniens* allows a federal district court to dismiss a suit over which it would normally have jurisdiction in order to best serve the convenience of the parties and the ends of justice."). Plaintiffs' decision to have filed the original proceeding in the SDNY should be given great weight, as should Plaintiffs' decision to seek to amend the SDNY Action to include the Defendants sued here. Further, the SDNY appears to be a more convenient forum, even for Plaintiffs. *In re Factor VIII or IX Concentrate Blood Prods. Litig.*, 484 F.3d 951, 956 (7th Cir. 2007) ("[I]f the plaintiff is suing far from home, it is less reasonable to assume that the forum is a convenient one and therefore 'the presumption in the plaintiff's favor 'applies with less force....' " (citation omitted)). The public interest factors, including administrative burdens, the preference for local resolution of local disputes, and the avoidance of burdening jurors, also counsel dismissal of this Action. *Clerides v. Boeing Co.*, 534 F.3d 623, 628 (7th Cir. 2008).

a second suit is engaging in such prohibited 'claim splitting,' courts have sought to discover whether the claims 'arise out of the same basic factual situation . . . ." (citation omitted)).  In both complaints, Plaintiffs allege that employees of UBS entities copied articles from Plaintiffs' Publications for use in DON, and thereafter, DON was distributed by UBS to its employees and customers.  (Lane Decl. Ex. A ¶ 28-30; Compl. ¶ 31-35).  In addition, Plaintiffs' two claims alleged here, copyright infringement (which is clearly identical to the claims alleged in the SDNY) and violation of the 17 U.S.C. § 1202, a claim only alleged in this Action, arise out of this same core of operative facts.  As such, for res judicata purposes, Plaintiffs' copyright infringement claims and DMCA claim constitute an identical cause of action.  *Shaver*, 840 F.2d at 1365 (When "two lawsuits involve [a] single core of operative facts, they constitute identical causes of action for *res judicata* purposes [which] [a]lthough this single group of facts may conceivably give rise to different claims for relief upon different theories of recovery, under the federal definition a single cause of action remains.").  There was no jurisdictional bar preventing Plaintiffs from pleading these claims in the SDNY Action – Plaintiffs simply waited too long to assert such claims and have now been barred from bringing any new claims or adding new parties by two federal judges.  The fact that Plaintiffs have now made a *third* motion regarding their failed motion to amend in the SDNY Action does not give Plaintiffs the right to burden the court system with this Action.  *Sommerfield*, 2009 WL 500643, at *3 (stating that "[a]lthough this is true [that a denial of a motion to amend to add claims to a first-filed action did not bar a subsequent-filed action], it does not follow that the court should therefore allow [the plaintiff] to assert different theories of liability based on the same facts in separate cases").  Plaintiffs may not now attempt to bring additional claims of infringement and an additional theory of liability under the DMCA on the basis of the same facts alleged in the SDNY Action.

14

The court in *CIVIX-DDI,* found similar maneuvering by a plaintiff to be impermissible and dismissed the second action. 2005 WL 1126906, at *4. In *CIVIX-DDI*, the plaintiff initially alleged five claims of patent infringement. *Id*. at *1. When, after the close of discovery, the plaintiffs sought to add additional claims, and the defendant responded by moving to strike, the plaintiff dropped the claims, and filed a second action. *Id*. at *4. The court dismissed the second action, holding that the plaintiff "should have timely brought [the claims] in the Initial Action, [and] [t]he doctrine of claim splitting prevents [the plaintiff] from avoiding a potential adverse ruling from the Court regarding the timeliness of asserting the new claims in the Initial Action, by attempting to assert its new claims in the Second Action." *Id.* Plaintiffs here attempted to raise claims in a first-filed action and were barred from doing so because of their lengthy delay in seeking leave to amend. This Court, as the court did in *CIVIX-DDI*, should reject Plaintiffs' attempt to bypass a potential adverse ruling in the SDNY. *See also More v. R & L Carriers, Inc.,* No. 00 C 5583, 2002 WL 1632206, at *7 (N.D. Ill. July 23, 2002) (A party "may not circumvent a prior order from the district court simply because he is not satisfied with the outcome").

Plaintiffs' suit in this District is nothing more than a drain on judicial resources. *Rogers v. Desiderio*, 58 F.3d 299, 300 (7th Cir. 1995) ("This court deprecates the practice of filing two suits over one injury . . . . Multiplication imposes needless costs on one's adversary, on the judicial system, and on other litigants, who must endure a longer queue."). Since the SDNY Action is already underway – and has been so for over three and a half years – this Action should be dismissed as an improper splitting of Plaintiffs' claims. *Kim*, 412 F. Supp. 2d at 941-42 (dismissing the later-filed action as impermissible claim-splitting and stating that "[u]nlike *res judicata*, which may only be applied to dispose of an action following a final judgment on the

15

merits in a prior action, courts have applied the doctrine of claim splitting before there is a final judgment in a prior action."); *CIVIX-DDI*, 2005 WL 1126906, at *4 (dismissing the later-filed action as barred by claim-splitting and stating that claim-splitting does not only apply "when the first action has proceeded to judgment [but also] when the first action was still pending).

### 3. This Action Should Be Dismissed as Legally Insufficient

Although Plaintiffs' suit should be dismissed for the reasons discussed above, even were Plaintiffs allowed to proceed, this Action is legally insufficient for multiple reasons.[5] The vast majority of Plaintiffs' claims should be dismissed as they are barred by the statute of limitations. In addition, Plaintiffs' one claim that differs from those brought in the SDNY Action fails to state a claim for which relief may be granted under the DMCA.

### a. The Vast Majority of Plaintiffs' Alleged Infringements Are Barred by the Statute of Limitations

The statute of limitations for any claim under the Copyright Act – including both Plaintiffs' direct infringement claims and Plaintiffs' DMCA claims – is three years from the date the claim accrued. *See* 17 U.S.C. § 507(b); *Rudnicki v. WPNA 1490 AM*, No. 04 C 5719, 2009 WL 4800030, at *11 n.11 (N.D. Ill. Dec. 10, 2009) ("Civil actions under the Copyright Act are time-barred if they are not brought within three years of the alleged act of infringement." (citing 17 U.S.C.A. § 507(b))). Any use of Plaintiffs' copyrighted material as part of DON, if it in fact occurred, occurred on the same day the purportedly infringed Publication was published. For IOD, Plaintiffs list copyright registrations covering all issues published within the months from

---

[5] As an initial matter, UBS Investment Bank is not an incorporated entity, but rather is solely an operating division within UBS AG. Plaintiffs may not, through manipulation of the corporate form, attempt to impose liability on UBS Investment Bank. *Albers by Albers v. Church of the Nazarene*, 698 F.2d 852, 857 (7th Cir. 1983) ("[A] tort plaintiff may not multiply defendants by breaking up a corporation or other institution into its organizational components when those components have no separate legal identity"). UBS Investment Bank is thus not an entity capable of being sued and there can be no award of damages against it. *Fitzgerald v. CBS Broadcasting, Inc.*, 491 F. Supp. 2d 177, 183 (D. Mass. 2007) (finding that there could "be only one award of statutory damages" where a plaintiff sues two corporate divisions for copyright infringement, since a division is "a mere operation[] of [a parent corporation and] cannot sue or be sued").

January 2005 to February 2008.[6]  For PIW, Plaintiffs list eighteen individual issues published

within January and February 2005, January 2006, and August 2007 covered by copyright

registrations.  For WGI, Plaintiffs list nine individual issues published within August 2006 and

March 2007 covered by copyright registrations.  Only alleged acts of infringements that began

accruing three years prior to the date this Action was filed on November 19, 2007 are actionable

– the rest are barred by the statute of limitations.  Therefore, the vast majority of Plaintiffs'

copyright infringement and DMCA claims are clearly barred and should be dismissed.

> **b.**    **Plaintiffs Do Not State a Claim Under the Digital Millennium Copyright Act**

Plaintiffs' Complaint states that Defendants "intentionally removed and/or

altered, and/or have caused and induced others to remove and/or alter, copyright management

information from the IOD, PIW, and WGI Copyrighted Works, and have thereafter distributed

substantial portions of those Works, having reasonable grounds to know that such acts would

induce, enable, facilitate or conceal an infringement of copyright . . . ."  (Compl. ¶ 93).  Through

this statement, Plaintiffs attempt to allege two alternative violations of the DMCA, namely that

Defendants: (1) removed and/or altered copyright management information in violation of 17

U.S.C. § 1202(b)(1); and (2) distributed copies of works with removed or altered copyright

management information in violation of 17 U.S.C. § 1202(b)(3).[7]  In reality, even accepting

---

[6] To properly plead an infringement claim, a plaintiff must demonstrate ownership and copyright registration and must allege infringement.  *See Mid America Title Co. v. Kirk,* 991 F.2d 417, 421 n.8 (7th Cir. 1993) (A complaint alleging copyright infringement must demonstrate '"present ownership by plaintiff, registration in compliance with the applicable statute, and infringement by defendant . . . ."' (citation omitted)).  Despite claiming a pattern of infringement spanning April 27, 2005 through August 16, 2010 for IOD and from January 4, 2005 through to the present day for PIW and WGI, Plaintiffs have only provided copyright registrations for a limited number of dates.

[7] Removal or alteration of copyright management information.--No person shall, without the authority of the copyright owner or the law--
    (1) intentionally remove or alter any copyright management information,
    . . . or,
    (3) distribute, import for distribution, or publicly perform works, copies of works, or phonorecords, knowing that copyright management information has been removed or altered without authority of the copyright owner

Plaintiffs' alleged facts as true, Plaintiffs cannot maintain a DMCA claim against the Defendants.

### i.  No Copyright Management Information Was Removed or Altered From the Publications

Plaintiffs' attempted claim under the DMCA overlooks the fact that the information allegedly removed does not constitute copyright management information as the term is applied within the DMCA.[8]  Section 1202, "Integrity of copyright management information," applies to copyright management information placed on digital copyrighted works. *Textile Secrets Int'l, Inc. v. Ya-Ya Brand Inc*., 524 F. Supp. 2d 1184, 1202 n.17 (C.D. Cal. 2007) (The DMCA was enacted "to give an added layer of protection to certain works that were vulnerable to infringement due to advances in modern technology, namely the Internet and electronic commerce," not to "apply to *all* instances of copyright infringement where copyright information was falsified, altered or removed as set forth in subdivisions (a) and (b) of § 1202." (emphasis in original)).

> Congress intended the DMCA to modernize copyright protection as a response to the development of new technologies which both enabled new forms of copyright protection as well as new forms of copyright infringement. . . . [T]raditionally, the rights of authors have been managed by people, who have controlled access and reproduction. Through scientific advances, we now have technological measures that can control access and reproduction of works, and thereby manage the rights of copyright owners and users. Section 1202 operates to protect copyright by

---

or the law, knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title.
17 U.S.C. § 1202(b).

[8] The DMCA defines "copyright management information" to include eight categories of information, three of which are possibly relevant here:

> (1) The title and other information identifying the work, including the information set forth on a notice of copyright.
> . . .
> (3) The name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright.
> . . .
> (6) Terms and conditions for use of the work.

17 U.S.C. § 1202(c).

> protecting a key component of some of these technological measures. It should not be construed to cover copyright management performed by people, which is covered by the Copyright Act, as it preceded the DMCA; it should be construed to protect copyright management performed by the technological measures of automated systems.

*IQ Group, Ltd. v. Wiesner Publ'g, LLC*, 409 F. Supp. 2d 587, 597 (D.N.J. 2006).

If, as Plaintiffs allege, a copyright notice on a print newsletter constitutes copyright management information, then nearly every copyright case would involve a claim under the DMCA. *See Murphy v. Millennium Radio Group LLC*, No. 08-1743, 2010 WL 1372408, at *4 (D.N.J. Mar. 31, 2010) ("[V]irtually all garden-variety copyright infringement claims would be converted to DMCA claims, supplanting the original Copyright Act. As an added section to the Copyright Act, the DMCA is clearly intended so supplement the act; the result urged by Plaintiff would completely disregard statutory intent and design"); *Textile Secrets Int'l, Inc.*, 524 F. Supp. 2d at 1195 (Such an interpretation "would in effect give § 1202 limitless scope in that it would be applicable to all works bearing copyright information"). This section of the DMCA was enacted "to ensure the integrity of the electronic marketplace by preventing fraud and misinformation." H.R. Rep. No. 105-551 Pt. 1, at 10 (1998). The DMCA does not protect against interference with a copyright notice placed on a traditional newsletter; it simply protects against interference with *technological* measures designed to protect copyrighted works. *See Textile Secrets Int'l, Inc.*, 524 F. Supp. 2d at 1202 (holding that the DMCA did not apply to the removal of a copyright notice on a fabric design); *cf. Cable v. Agence France Presse*, 728 F. Supp. 2d 977, 978, (N.D. Ill. 2010) (finding that the plaintiff's name and copyright notice, which were "encoded as a hotlink which, when clicked on, took the user to [the plaintiff's] own website," were copyright management information under 17 U.S.C. § 1202); *Gregerson v. Vilana Fin., Inc.*, No. 06 Civ. 1164, 2008 WL 451060, at *7-8 (D. Minn. Feb. 15, 2008) (finding

liability under 17 U.S.C. § 1202 where the defendant had removed a digitally embedded watermark from the plaintiff's digital photographs).

As Plaintiffs allege in the Complaint, PDF versions of the Publications were sent via email pursuant to the subscription agreement. These PDF versions were the same as the print versions sent by mail. The layout, design, and printed copyright notice are all identical. The only difference in receiving the PDF version of the newsletter versus the mailed version was the form of transmission. However, the use of email alone does not bring the action within the scope of the DMCA. *See IQ Group, Ltd*., 409 F. Supp. 2d at 597 ("Although the advertisements were sent via email, and thus likely copied and distributed as part of an automated process within a computer network environment, this does not bring the information removal within § 1202."). Further, as the court found in *Murphy*, using software to develop or insert a copyright notice does not transform a copyright notice into copyright management information. 2010 WL 1372408, at *3. In that case, the court dismissed the DMCA claim stating that the information alleged by the plaintiff to be copyright management information was "simply a photography credit in the gutter of a print magazine, [and] was in no way a 'component of an automated copyright protection or management system.'" *Id*. (citation omitted). Similarly, here, without the requisite "copyright management information," there simply can be no violation of 17 U.S.C. § 1202.

### ii. Plaintiffs Cannot Adequately Plead a Claim under 17 U.S.C. § 1202(b)(1)

Even if the information alleged by Plaintiffs does constitute "copyright management information," Defendants clearly could not have intentionally removed any copyright management information from Plaintiffs' Publications. Plaintiffs must demonstrate that Defendants have removed or altered copyright management information from the Publications "knowing . . . or having reasonable grounds to know that it will induce, enable,

20

facilitate, or conceal an infringement" of the federal copyright laws. *Gordon v. Nextel*

*Commc'ns and Mullen Adver., Inc*., 345 F.3d 922, 927 (6th Cir. 2003) ("A section 1202(b)(1)

violation occurs when a person (i) without authority of the copyright owner or the law (ii)

intentionally removes or alters any copyright management information (iii) knowing or having

reasonable grounds to know that it will induce, enable, facilitate, or conceal an infringement of

the federal copyright laws.").  Plaintiffs do not plead, and cannot allege, that the Defendants in

this Action – who were simply passive recipients of DON, a publication created by a separate

entity, in a foreign country, with no direct connection to Plaintiffs aside from occasional

attributed news articles – were involved in the inclusion of Plaintiffs' copyrighted work in DON.

In a conclusory fashion, Plaintiffs assert the allegation by simply mirroring the language of the

statute.  Plaintiffs state that Defendants "intentionally removed and/or altered . . . copyright

management information from IOD, PIW, and WGI Copyrighted Works . . . having reasonable

grounds to know that such acts would induce, enable, facilitate or conceal an infringement of

copyright . . . . "  (Compl. ¶ 93).  There is no factual content provided in the Complaint to

support this allegation.  Plaintiffs' statement that "Defendants have willfully undertaken to copy .

. . from articles contained in the EIG Publications or substantial portions thereof without

permission from Plaintiffs and have taken efforts to conceal said actions" is merely another

recital of the statute but does not indicate *how* Defendants knew, or had reasonable grounds to

know, that it would induce, enable, facilitate or conceal any alleged infringement.[9]  (Compl. ¶

41).  Without involvement in the actual process by which Plaintiffs' purported copyright

---

[9] Indeed, if this claim proceeds it will be shown that the four defendant entities in this suit are not involved in the compilation of DON, and that Plaintiffs can offer no evidence to the contrary.  Further, regardless of which UBS entity compiles DON, it is manifestly evident from reviewing an issue of DON that includes excerpts from IOD that IOD was directly cited to as the source of the excerpt.  To assert that the UBS entities attempted to conceal the inclusion of IOD in DON in light of DON including such obvious reference information is plainly ridiculous.

management information was allegedly removed, Defendants cannot be held liable for a violation of 17 U.S.C. § 1202(b)(1).

### iii. Plaintiffs Do Not Adequately Plead the Mental State Required under 17 U.S.C. § 1202(b)(3)

Plaintiffs also fail to allege that Defendant acted with the requisite mental state required for 17 U.S.C. § 1202(b)(3) liability. Under 17 U.S.C. § 1202(b)(3), Plaintiffs must prove that Defendants distributed copies of their Publications "knowing that copyright management information has been removed or altered without" their authority and did this "knowing . . . or having reasonable grounds to know that it will induce, enable, facilitate, or conceal an infringement" of the federal copyright laws. *See Gordon*, 345 F.3d at 926 (Plaintiffs "must prove that the defendants-or those for whom they are vicariously liable-possessed actual knowledge of the unauthorized change to the copyright management information, because the statute requires the defendant to act 'knowing that copyright management information [had] been removed or altered without authority of the copyright owner or the law.'" (citation omitted)); *Keogh v. Big Lots Corp*., No. 3:04-00738, 2006 WL 861378, at *2 (M.D. Tenn. Apr. 27, 2006) ("The plain language of the statute . . . makes clear that constructive knowledge is not enough, there must be actual knowledge."). Plaintiffs' claim is inherently flawed as Plaintiffs do not even allege that Defendants distributed copyright management information with the dual requisite mental states.

Plaintiffs do not provide any factual assertion that, to the extent Defendants were involved in the distribution of DON, Defendants had *any* knowledge that DON included excerpts from IOD without Plaintiffs' authorization. Indeed, Plaintiffs do not even attempt to argue that Defendants *should* have known that, despite the open and obvious attribution to IOD, that the use of excerpts in DON was unauthorized. Plaintiffs' statement that Defendants had "full knowledge

of Plaintiffs' exclusive rights in IOD, PIW, and WGI Copyrighted Works, and [acted] in conscious disregard of those rights" does not sufficiently plead the statutorily-required mental state for a 1202(b)(3) claim.  (Compl. ¶ 94); s*ee Keogh*, 2006 WL 861378, at *2 (dismissing the action "because Plaintiff does not allege any facts to support the conclusion that [the defendant] had any actual knowledge of the removal of CMI without Plaintiff's knowledge).  Additionally, as with Plaintiffs' 17 U.S.C. § 1202(b)(1) claim, Plaintiffs do not allege any facts that would support the allegation that, in distributing DON, Defendants were inducing, enabling, facilitating or concealing an infringement.  Therefore, as with Plaintiffs' other claims, the 17 U.S.C. 1202(b)(3) claim must be dismissed as pled.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that this Court dismiss Plaintiffs' Complaint in its entirety.


Dated:  May 12, 2011
         New York, NY

                                        WINSTON & STRAWN LLP

                                        By:      /s/Thomas Patrick Lane
                                                 Thomas Patrick Lane
                                                 *Admitted Pro Hac Vice*

                                                 200 Park Avenue
                                                 New York, New York 10166
                                                 Tel: (212) 294-6700
                                                 Fax: (212) 294-4700
                                                 TLane@winston.com

                                                 Michael Bess
                                                 WINSTON & STRAWN LLP
                                                 35 W. Wacker Drive
                                                 Chicago, Illinois 60601
                                                 Tel: (312)558-5600
                                                 Fax: (312)558-5700

*Of Counsel*

Michael S. Elkin
Robert Turner
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166

Timothy M. Broas
*Of Counsel*
WINSTON & STRAWN LLP
1700 K Street NW
Washington, D.C. 20006

*Attorneys for Defendants*

24